[Cite as *State v. Payne*, 2016-Ohio-5470.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2015-12-219 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 8/22/2016 |
| - vs - | | |
| | : | |
| GREGORY N. PAYNE, | : | |
| | | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-05-0789


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Charles Conliff, 5145 Pleasant Avenue, Suite 18, P.O. Box 18424, Fairfield, Ohio 45018-0424, for defendant-appellant


**S. POWELL, J.**

{¶ 1} Defendant-appellant, Gregory N. Payne, appeals from his conviction in the Butler County Court of Common Pleas after he pled guilty to one count of felonious assault. For the reasons outlined below, we affirm.

{¶ 2} On June 17, 2015, the Butler County Grand Jury returned an indictment charging Payne with one count of felonious assault and one count of trespassing in a

habitation. Approximately one month later, on July 9, 2015, Payne entered pleas of not guilty and not guilty by reason of insanity. Payne then requested the trial court order a competency evaluation to determine his competency to stand trial. The trial court granted Payne's request for a competency evaluation and subsequently determined that Payne was competent to stand trial in an entry filed August 27, 2015.

{¶ 3} Approximately two months later, on October 16, 2015, Payne entered into a plea agreement and pled guilty to one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony, in exchange for the trespassing in a habitation charge being dismissed. According to the record, the felonious assault charge arose after Payne caused serious physical harm to the victim, W.A., his cellmate while he was incarcerated at the Butler County Jail. After accepting Payne's guilty plea, which the trial court found to be knowingly, intelligently, and voluntarily made, the trial court sentenced Payne to six years in prison and ordered him to serve a mandatory three-year period of postrelease control.

{¶ 4} Payne now appeals from his conviction, raising a single assignment of error for review.

{¶ 5} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ACCEPTING A GUILTY PLEA THAT WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY.

{¶ 6} In his single assignment of error, Payne argues the trial court erred by accepting his guilty plea because it was not knowingly, intelligently, and voluntarily made. We disagree.

{¶ 7} When a defendant enters a guilty plea in a criminal case, the plea must be knowingly, intelligently, and voluntarily made. *State v. Mosley*, 12th Dist. Warren No. CA2014-12-142, 2015-Ohio-3108, ¶ 6. "Failure on any of those points 'renders enforcement

- 2 -

of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. McQueeney*, 148 Ohio App.3d 606, 2002-Ohio-3731, ¶ 18 (12th Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To ensure that a defendant's guilty plea is knowingly, intelligently and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994, ¶ 10.

{¶ 8} As relevant here, pursuant to Crim.R. 11(C)(2), the trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 9} A guilty plea is invalid if the trial court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the trial court to verify the defendant understands the constitutional rights he is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. However, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *Id.* Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant

subjectively understood the effects of his plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12.

{¶ 10} In this case, Payne does not dispute that the trial court strictly complied with Crim.R. 11(C)(2)(c), which requires the trial court to verify the defendant understands the constitutional rights that he is waiving, nor does Payne dispute that the trial court substantially complied with the nonconstitutional notifications as required by Crim.R. 11(C)(2)(a) and (b). Rather, Payne argues that his guilty plea was not knowingly, intelligently, and voluntarily made because his "only confidential consultation" with his trial counsel occurred a few days prior to him entering his guilty plea. According to Payne, this denied him the opportunity to have a substantive discussion with his trial counsel regarding trial strategy, potential witnesses, and the evidence against him.

{¶ 11} After a thorough review of the record, we find the record does not support Payne's claim. As Payne readily admits, the trial court in this case conducted a methodical Crim.R 11(C) plea colloquy before Payne entered his guilty plea. This included the trial court asking Payne if he had read and signed the plea of guilty and jury waiver form after consulting with his trial counsel. The trial court also explicitly asked Payne if he had "been able to communicate" and speak with his trial counsel about his options prior to entering into the plea agreement with the state. Both questions Payne answered in the affirmative. The plea of guilty and jury waiver form read and signed by Payne also indicated Payne was satisfied with his trial counsel's advice and competence.

{¶ 12} Nevertheless, at the October 16, 2015 plea hearing, Payne told the trial court that he was only "so-so" satisfied with his trial counsel's performance. Payne also challenged his trial counsel's professionalism. Specifically, as Payne stated when asked by the trial court if there was anything his trial counsel could have done differently:

I think he could have come over to the jail and spoken to me a lot

sooner than what he did to at least, you know, get my version of what happened and my details on what happened, and, you know, I kind of – I would like just to say that it's unprofessional for a lawyer to have a trial and come up within a week and him not make it to see me and get my side of the story until this past Monday [three days earlier on October 12, 2015].

{¶ 13} In response, Payne's trial counsel stated that he had been unable to meet with Payne any earlier because he had been receiving treatment for a heart condition during the preceding two months, a condition that had impacted both his work with the public defender's office and that of his own private practice. However, Payne's trial counsel assured the trial court that he had spoken with Payne, that he understood Payne's version of events, and that, if necessary, he was ready to proceed to trial as scheduled. As Payne's trial counsel stated:

> Now, let me indicate on the record we're scheduled for trial a week from Wednesday [October 28, 2015] and I've indicated to Mr. Payne that this is his choice. I will be ready for trial. We have time to prepare for that and we have time to show these subpoenas that he would want me to have, and that I'm prepared to go to trial on his behalf.

Payne's trial counsel also stated:

> If I didn't think I was ready to proceed and I thought in any way that [Payne] had not had a chance to explain his side to me and we could not present that in court, I would ask the Court either to continue the matter or to appoint – ask the public defender's office to appoint someone else to represent him.

Concluding, Payne's trial counsel stated that if Payne "was not happy with this, I'd ask the Court to not proceed with the plea."

{¶ 14} After hearing from Payne's trial counsel, the trial court addressed Payne and stated:

> THE COURT: * * * I understand you said – I believe your words were you wished [your trial counsel] would have come and talked to you sooner.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Not that he hadn't talked to you.

- 5 -

THE DEFENDANT: Right.

THE COURT: Not that he hasn't talked to you about this plea. Obviously, not that he was not able to get a dismissal of Count II in this. So while I understand that – again, I'll just use your words because I don't know your communications and I'm not supposed to know your communications with [your trial counsel].

THE DEFENDANT: Yes, sir.

THE COURT: But you wish he would have come there sooner. What that says to me is though he has come, you have spoken with him; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. You've been able to discuss this matter with him?

THE DEFENDANT: Yes, sir.

Continuing, the trial court then stated:

THE COURT: And I have no doubt that [your trial counsel] will go to trial on your behalf, if you so choose, and represent you. So my question is after, obviously, you have talked to him and obviously, in your estimation you wish it would have been sooner. That's fine. Now that you have talked to him – now that you have talked to him about this potential plea, you've talked to him about your witnesses and how to go forward, would it still be your desire to want to go forward with this plea today.

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. So you are satisfied at least that although maybe [your trial counsel] wasn't there sooner, maybe as often, that you were able to get advice from him that you believe is beneficial to you and get a deal that you believe is in your best interest to go forward?

THE DEFENDANT: Yes, sir.

{¶ 15} Following this exchange, the trial court discussed with Payne the nature of the felonious assault charge he faced. The trial court then instructed the state to read the statement of facts into the record. As noted above, the statements of facts indicated Payne

had caused serious physical harm to the victim, W.A., his cellmate while he was incarcerated at the Butler County Jail. The trial court then stated:

> THE COURT: All right. Mr. Payne, do you understand the allegations contained in that statement.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Do you agree that you committed – do you agree with the facts that you committed the offense and those facts are a true representation of your conduct.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And you understand that if you plead guilty to this offense, you are making a complete admission you committed the allegations contained therein?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. And do you understand if you plead guilty, this Court could enter a judgment of guilt against you and then proceed to sentence you in accordance with law. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Knowing all this, do you admit the facts as they are read are true?
>
> THE DEFENDANT: As they are read, yeah.

{¶ 16} Thereafter, once the trial court informed Payne of the constitutional rights he would be waiving by entering a guilty plea, the trial court stated:

> THE COURT: All right. Now, we've covered a lot of things here today. Mr. Payne, do you have any questions about anything that I've covered with you today?
>
> THE DEFENDANT: No, sir. Actually, I don't.
>
> THE COURT: Okay. Do you have any questions about the guilty plea and jury waiver form that we've discussed?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. And we've talked a couple of times about

your discussions with [your trial counsel] and going forward. Is it still your desire to go forward here today with the –

THE DEFENDANT: Yes, sir.

Payne then entered his guilty plea to the felonious assault charge, which the trial court accepted upon finding it was knowingly, intelligently, and voluntarily made.

{¶ 17} After accepting Payne's guilty plea, the trial court ordered a presentence investigation report and explained to Payne that he would be screened for potential placement in a community based correctional facility. Shortly thereafter, while the trial court was scheduling Payne's sentencing hearing, Payne addressed the trial court again stating he was a productive member of society who had gone to trade school and received a Class A commercial driver's license. In response, the trial court instructed Payne that that information would be contained in the presentence investigation report and addressed more fully during mitigation at his sentencing hearing. The trial court also informed Payne that he would have the right of allocution at his sentencing hearing where he would "have the right to formally address me and I will listen to everything you have to say that day."

{¶ 18} Although initially indicating he understood, Payne then stated that he was now hesitant to enter a guilty plea because "I don't feel I was guilty of felonious assault. It was a couple of other charges that I could have been charged with that I obviously wasn't that I felt that I was guilty of[.]" Payne then stated that he disagreed with some of the information contained within the state's discovery packet provided to him. To this, Payne's trial counsel again asked Payne if he wanted to withdraw his guilty plea, to which Payne stated:

THE DEFENDANT: No, no. I was –

[PAYNE'S TRIAL COUNSEL]: Because we can present all that in trial, [Payne].

THE DEFENDANT: No, I was just – I'm just speaking to the Judge on my own behalf, so –

[PAYNE'S TRIAL COUNSEL]: Okay.

THE DEFENDANT: That's all.

{¶ 19} The trial court then addressed Payne and stated:

THE COURT: And, like I said, we can do all that at that time. I understand that there's not going to be everything in discovery that you may agree with.

THE DEFENDANT: Right.

THE COURT: I think the fact that we had a plea is you did agree with the facts, and I think it was a fairly vanilla statement of facts * * * that was read that that's what happened and I understand that if I was in your shoes, I would want to be charged lesser than that, but at this point, you did admit to the facts. The facts do make out a felonious assault charge.

THE DEFENDANT: Right.

THE COURT: And I have accepted that * * * from you. And so all these things that you are addressing to me truly go toward mitigation * * * meaning things that would lessen any potential punishment that I would do.

THE DEFENDANT: Right.

The trial court then asked Payne once again if he wanted to withdraw his guilty plea, to which Payne explicitly stated "[n]o, sir."

{¶ 20} As can be seen, the trial court went to exhaustive lengths to ensure Payne's guilty plea was knowingly, intelligently, and voluntarily made after he had the opportunity to consult with his trial counsel. While Payne claims otherwise, there is simply nothing in the record to indicate Payne was unable to have a substantive, confidential consultation with his trial counsel prior to entering his guilty plea. Yet, even if there was such evidence, the record is clear that Payne repeatedly and unambiguously stated that he wanted to plead guilty, did not want to take the matter to trial, and did not wish to withdraw his plea once it had been made. Therefore, finding no error with the trial court's decision finding Payne's guilty plea knowingly, intelligently, and voluntarily made, Payne's single assignment of error is without

merit and overruled.

{¶ 21} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.